IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMAR ALFORD,**

    Plaintiff,

v.                                                                                          Civil Action No. **3:23CV798 (RCY)**

**SERGEANT O. OYEBADE,** *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Jamar Alford, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. The matter proceeds on the Particularized Complaint (ECF No. 18), the Motion to Dismiss filed by Defendants Sergeant O. Oyebade, Warden Thomas Meyer, and Captain Panniel ("Defendants")[1] (ECF No. 26), and the Court's screening obligations pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Defendants and the Court provided Alford with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). ECF Nos. 27, 28. Alford filed a Motion to Deny Defendants' Motion of Dismissal, which is truly just a response to the Motion to Dismiss. ECF No. 32. Also before the Court is Plaintiff's Motion for Speedy Trial and Jury Trial (ECF No. 31). For the reasons stated below, the claim against Defendant Meyer will be DISMISSED. The Motion to Dismiss will, however, be DENIED. The Motion for Speedy Trial and Jury Trial will be DENIED, though the Court acknowledges Plaintiff's jury trial demand.

---

[1] Counsel for Defendants indicates that the correct spelling of Defendant Myers's name is "Meyer." ECF No. 26, at 1 n.1. In his initial Complaint and in the Motion to Dismiss, Captain Panniel's name is spelled with a single letter "l." Although Alford spells the name with two "l's" in his Particularized Complaint (i.e., Captain Panniell), the Court uses the single-l spelling, "Panniel," for consistency's sake.

## I. PRELIMINARY REVIEW & STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. ALFORD'S ALLEGATIONS AND CLAIM

Alford contends that Defendants subjected him to unlawful conditions of confinement when a pipe overflowed in the Restrictive Housing Unit of the State Farm Correctional Center. ECF No. 18, at 4.[2]  Alford alleges as follows:

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the punctuation and capitalization in the quotations and removes the underlining and unnecessary parentheses from Alford's submissions.

3

14. On or about October 29th, 2023, Plaintiff was assigned to reside in Cell #9 of the Restrictive Housing Unit (RHU) at State Farm Correctional Center (SFCC).

15. On several occasions after October 29, 2023, Sgt. Obeyade was informed and aware of pipe issues inside the RHU and reported issues to Captain Panniel and Captain Dorset of SFCC.

16. On or about November 3rd, 2023, the hallway drainpipe overflowed with water contaminated with feces, urine, and various debris from every toilet connected to it.

17. Sgt. Obeyade called maintenance to report the flooding in the RHU.

18. Sgt. Obeyade handed towels to Plaintiff and others to stop further contaminants from entering cells.

19. Maintenance arrives and fixes [the] drain and the inmate unit cleaner arrives to clean and sanitize [the] RHU hallway.

20. Plaintiff asks Sgt. Obeyade for cleaning supplies, gloves, and a face mask and is denied.

21. Sgt. Obeyade['s] shift ends around 5-6 p.m. and [he] leaves without allowing Plaintiff to clean [his] cell or remove [the] contaminated towels.

22. During [the] shift change, Plaintiff asks for cleaning supplies and a face mask to [the] night shift officer and is told, "I am not authorized to allow any cleaning," and Plaintiff is denied.

23. On November 4, 2023, Plaintiff files a written complaint through [the] grievance process. . . . addressed to Warden T. Meyer.

24. All grievances are collected once a week on Monday mornings.

25. On November 5th, 2023, Plaintiff gets sick from continuous smell of fumes and endures a series of headaches and stomach pains.

26. On or about November 4–5, 2023, Captain Panniel (Watch Commander) makes [his] observation round in RHU and is told about [the] unsanitary conditions and health concerns, and Captain Panniel states, "inmates caused the flooding, its their fault," and then leaves RHU.

27. On or about November 5th, 2023, the Chief of Housing and Programs, Ms. T. Johnson enters the RHU and Plaintiff informs her of the

conditions, and she orders Sgt. Oyebade to allow Plaintiff, as well as other inmates, to receive cleaning supplies, gloves to sanitize cells and remove contaminated towels.

28. Ms. T. Johnson leaves, Sgt. Oyebade goes on a work break and does not return until shift change at 5–6 p.m.

29. Sgt. Oyebade leaves and does not allow Plaintiff to clean [his] cell. Plaintiff asks [the] night shift to clean and is denied.

30. Around 9:40 p.m., Plaintiff suffered dizziness and nausea[], and turns in a sick call for medical.

31. On November 6, 2023, Plaintiff is awoken to receive breakfast tray and cannot eat due to [the] smell of [his] cell.

32. Plaintiff tries to eat [his] tray and later vomits the food.

33. Plaintiff lays down [and is] suffering [a] headache and vomits twice more before calling Officer Green for help.

34. Officer Green calls medical and they stated Plaintiff needs to place a sick call.

35. Officer Green tells Plaintiff to lay down until lunch trays and try to eat.

36. Lunch trays are received late, around 1–2 p.m., and Plaintiff eats beans, bread, and white rice with a cup of water.

37. 15-20 minutes afterward, Plaintiff vomits again, this time in front of Officer Odion and he calls medical, and again they refuse to see [him].

38. Officer Odion tells Plaintiff to place in a sick call to speed up the process to be seen.

39. On November 6th, 2023, Plaintiff files [an] emergency grievance at 3:24 p.m. . . . All emergency grievances have a[n] 8-hour response period.

40. Emergency grievance is returned around 9:32 p.m. by night shift; responded to by . . . Lieutenant C. Henderson at 20:49 military time, stating that the "RHU officer will provide time to clean cell."

41. On November 7th, 2023, Plaintiff files another emergency grievance at 4:30 p.m. . . . explaining conditions and the effects the unsanitary cell is having on my health.

    42. Emergency grievance returns around 18:51 military time, responded [to] by . . . Nurse Diaz stating, "non-emergency."

    43. On November 7th, 2023, during shift change, Plaintiff and other inmates cover windows of cell doors to hinder the "count time" process in order for high-rank officers to be called.

    44. Lt's. C. Henderson, the night shift Lt., day shift Lt. John Doe, and Sgt. Wallace are called to the RHU.

    45. Plaintiff explains [the] situation surrounding the conditions, Lt. C. Henderson examines cells and apologizes and asks [the inmates] to uncover windows.

    46. Lt. C. Henderson and Sgt. Wallace allow Plaintiff and inmates to clean cells; while body camera records the entire ordeal.

    47. On November 8th, 2023, medical finally comes to [the] RHU and Plaintiff receives a sedative and medication for stomach pains and headaches.

    48. On November 9th, 2023, night shift hands out institutional mail and Plaintiff receives [his] original written complaint, signed and responded to by the Chief of Housing and Programs Ms. T Johnson, stating, "issues have been addressed 11/06/23 with maintenance and proper staff."

    49. These acts represent a pattern of events demonstrating intentional negligence and deliberate indifference against Plaintiff by Defendants Sergeant Obeyade, Captain Panniel, and Warden Thomas Meyer and have caused Plaintiff further mental and health risk and anguish as a result.

*Id.* at 4–9. While Alford fails to specifically identify any claims, the Court construes him to raise the following claim for relief based on his allegations:

  Claim One:  Defendants violated Alford's Eighth Amendment rights when they subjected him unsanitary conditions of confinement.[3]

---

[3] Defendants construe Alford to raise a Fourteenth Amendment claim that he had a liberty interest in avoiding confinement that imposes an atypical and significant hardship in relation to ordinary incidents of prison life. ECF No. 26, at 7. Even on a generous reading, the Court cannot construe Alford to have raised such a claim in his Particularized Complaint. At most, in the introduction, Alford indicates that it is brought pursuant to the "8th Amendment which prohibits cruel and unusual punishments and the 14th Amendment." ECF No. 18 ¶ 6. However, Alford does not suggest that his due process rights were violated. Rather, Alford clearly indicates that Defendants' conduct exhibited "deliberate indifference," ECF No. 18, at 9, and the Eighth Amendment governs his claim. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *Lewis*, 523 U.S. at 842 ("[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more general notion of substantive due process, must be the guide for analyzing these claims." (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.) (plurality opinion))).

Alford asks for monetary damages as relief. *Id.* at 9–10.

### III. ANALYSIS

**A. Insufficient Personal Liability Alleged**

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Although Alford briefly mentions Defendant Meyer in in the body of the Particularized Complaint, he fails to allege facts indicating that Meyer was personally involved in the deprivation of Plaintiff's Eighth Amendment rights. Rather, Alford seemingly alleges that Defendant Meyer should be held liable under a theory of *respondeat superior* simply based on his position as warden. Alford's Particularized Complaint is completely devoid of any facts that would plausibly suggest that Defendant Meyer was personally involved in the denial of cleaning supplies to Alford. Contrary to Alford's suggestion, Defendant Meyer is not liable simply because he supervised other

7

individuals who may have violated Plaintiff's rights. *See Vinnedge*, 550 F.2d at 928. To the extent that Alford believes that Defendant Meyer should be held liable under a theory of *respondeat superior* simply based on his position, he fails to state a claim for relief.[4] *Iqbal*, 556 U.S. at 676. Accordingly, any claim based on supervisory liability will be DISMISSED.

As for any theory of personal liability, Alford at most indicates that he addressed a written complaint to Defendant Meyer. However, it is evident that despite who the written complaint was addressed to, it was answered by the Chief of Housing and Programs, Ms. T Johnson, on November 9, 2023, three days after Alford was provided with cleaning supplies. Alford fails to allege facts that would indicate that Defendant Meyer was even made aware of Alford's complaints.

Even if the Court generously construed Alford's Particularized Complaint to allege that Defendant Meyer had seen his written complaint, this is insufficient to impute personal liability on Defendant Meyer. Alford fails to allege facts that plausibly suggest "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Alford must allege that Defendant "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th

---

[4] To the extent that Alford contends that Defendant Meyer was somehow liable on a theory of supervisory liability, that claim would fail. To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:     (cont'd)

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted) (citations omitted). Alford fails to demonstrate any one of these three factors.

8

Cir. 1995)). Alford fails to do so. In sum, Alford's allegations fall short of permitting the conclusion that Alford's written complaint placed Defendant Meyer on sufficient notice of an excessive risk of harm to Alford's health or safety. As such, Alford's limited factual allegations against Defendant Meyer fails to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683). Accordingly, any claim against Defendant Meyer will be DISMISSED.

**B. Conditions of Confinement**

To state an Eighth Amendment claim, an inmate[5] must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical

---

[5] In his Particularized Complaint, Alford indicates that in November 2023, he was a "confined as [a] pretrial detainee at State Farm Correctional Center." ECF No. 18 ¶ 1. On its face, this is not plausible because he was housed in a Virginia Department of Corrections facility, which is where only convicted inmates are housed. Moreover, it is evident that Alford had been convicted of many offenses as of November 2023, including a conviction and five-year sentence for being a felon in possession of a firearm in the Henrico Circuit Court on May 24, 2023. *See https://eapps.courts.state.va.us/ocis/landing*; follow "Accept" button; type "Alford, Jamar" and follow "Search" button; follow "Case # CR23001285–00" (last visited Apr. 7, 2025). While Alford may have had or has many charges pending across jurisdictions, that does not make him a pretrial detainee. Rather, he is a convicted prisoner awaiting the completion of other criminal proceedings.

or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong of a deliberate indifference claim requires the plaintiff to allege that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to plausibly allege that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Alford contends that he was denied cleaning supplies for approximately five days after a pipe overflowed in the RHU and the smell of the pipe's contents made him sick. From Alford's submissions, it is evident that the day that the pipe overflowed, Defendant Obeyade contacted maintenance and provided Alford with towels to clean up any water that had come into his cell. The pipe was fixed the same day and the hallways were cleaned. Nevertheless, Defendant

10

Obeyade refused to provide Alford with cleaning supplies for his cell that day or to remove the soiled towels, and two days later, after being ordered to provide Alford with cleaning supplies, Defendant Obeyade left work for the night without providing supplies to Alford. With respect to Defendant Panniel, a day or two after the pipe overflowed, he conducted rounds in the RHU, and when he was "told about [the] unsanitary conditions and health concerns," Defendant Panniel stated, "inmates caused the flooding, it's their fault," and then left without providing supplies. ECF No. 18 ¶ 26. Alford had soiled towels in his cell for approximately five days and the smell caused him to vomit and to have headaches. At this juncture, it appears that Alford has sufficiently alleged a claim of unconstitutional conditions of confinement against Defendant Oyebade and Panniel to survive a motion to dismiss.

## IV.  OUTSTANDING MOTION

Alford also filed a Motion for Speedy Trial and Jury Trial. ECF No. 31. Speedy trial protections—originating from the Sixth Amendment's speedy trial guarantee, the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, the Federal Rules of Criminal Procedure, and other federal statutes—only apply to criminal actions. To the extent that Alford wants the Court to set the case for a jury trial, the Court will direct the Clerk to note a jury demand on the docket. However, to the extent it seeks immediate relief in the form of an imminent trial, the Motion for Speedy Trial and Jury Trial (ECF No. 31) is DENIED.

## V.  CONCLUSION

For the foregoing reasons, Alford's claim against Defendant Meyer will be DISMISSED. The Motion to Dismiss (ECF No. 25) will be DENIED. Alford's Motion for Speedy Trial and Jury Trial (ECF No. 31) will be DENIED. Alford's Motion to Deny Defendant's Motion of Dismissal (ECF No. 32) is truly just a response to the Motion to Dismiss and therefore will be

DENIED as moot. Any remaining party wishing to file a motion for summary judgment must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

                                                            /s/ RCY

Roderick C. Young  
United States District Judge

Date: April 23, 2025  
Richmond, Virginia