IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMAR ALFORD,**

    Plaintiff,

v.                                                                                  Civil Action No. **3:23CV798 (RCY)**

**SARGEANT O. OYEBADE,** *et al.***,**

    Defendants.

**MEMORANDUM OPINION**

Jamar Alford, a former Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. The action proceeds on Alford's Particularized Complaint. The matter is before the Court on the Motion for Summary Judgment filed by Defendants O. Oyebade and Captain Panniel ("Defendants"). The Court provided Alford with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Alford has filed a Response. For the reasons stated below, the Motion for Summary Judgment will be GRANTED.

**I. SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY**[1]

In his Particularized Complaint, Alford contends that Defendants subjected him to unlawful conditions of confinement when a pipe overflowed in the Restrictive Housing Unit (RHU) of State Farm Correctional Center. Compl. 4, ECF No. 18. Alford contends that he was denied cleaning supplies for approximately five days after the overflow occurred on November 3, 2023, and the smell of the pipe's contents made him sick. The day that the pipe overflowed,

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in quotations from the record and omits unnecessary emphases and parentheses. The Court omits any secondary citations in the quotations from the parties' submissions.

Defendant Obeyade contacted maintenance and provided Alford with towels to clean up any water that had come into his cell and stop any more water from entering. *Id.* ¶¶ 17, 18. The pipe was fixed the same day and the hallways were cleaned. *Id.* ¶ 19. Nevertheless, Defendant Obeyade refused to provide Alford with cleaning supplies for his cell that day or to remove the soiled towels, and two days later, after being ordered to provide Alford with cleaning supplies, Defendant Obeyade left work for the night without providing supplies to Alford. *Id.* ¶¶ 21, 28–29. With respect to Defendant Panniel, a day or two after the pipe overflowed, he conducted rounds in the RHU, and when he was "told about [the] unsanitary conditions and health concerns," Defendant Panniel stated, "inmates caused the flooding, it's their fault," and then left without providing supplies. *Id.* ¶ 26. Alford had soiled towels in his cell for approximately five days, or until November 7, 2023, and the smell caused him to vomit and to have headaches that were not treated by medical until November 8, 2023. *Id.* ¶¶ 30–33, 37, 46–47.

Alford asks for monetary damages as relief. *Id.* at 9–10. While Alford failed to specifically identify any claims, the Court construed him to raise the following claim for relief:

> Claim One:   Defendants violated Alford's Eighth Amendment rights when they subjected him to unsanitary conditions of confinement.

*See* Mem. Op. 6, ECF No. 36.

By Memorandum Opinion and Order entered on April 23, 2025, the Court granted Defendants' Motion to Dismiss with respect to Defendant Meyer and dismissed any claim against him. *Id.* at 9. The Court denied the Motion to Dismiss with respect to Defendants Oyebade and Panniel, finding that, "[at] this juncture, it appears that Alford has sufficiently alleged a claim of unconstitutional conditions of confinement against Defendant[s] Oyebade and Panniel to survive a motion to dismiss." *Id.* at 11. On June 16, 2025, Defendants moved for summary judgment. Mot. Summ. J., ECF No. 39; Mem. Supp., ECF No. 40.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

Defendants ask the Court to dismiss Claim One because Alford failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  In support of the Motion for Summary Judgment, Defendants submitted:  (1) the affidavit of S. Mathena, a Regional Ombudsman for the Central Regional Office of the Virginia Department of Corrections ("VDOC"), Mem. Supp. Ex. 1 at 1–8 (hereinafter "Mathena Aff."[2]), ECF No. 40-1; (2) a copy of VDOC Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure

---

[2] The Court utilizes the paragraph numbers for citations to specific assertions in the affidavit.  For the remainder of ECF No. 40-1, the Court cites to the page numbers.

3

§ 866.1"), Mem. Supp. Ex. 1 at 9–25 (hereinafter "OP § 866.1"); (3) a copy of the Inmate Grievance report for Alford during the relevant time period, Mem. Supp. Ex. 1 at 25–34 (hereinafter "Grievance Report"); and (4) copies of two emergency grievances and a Written Complaint submitted by Alford, Mem. Supp. Ex. 1 at 35–37 (hereinafter "Alford Submissions"). Alford has not responded with any evidence to support his claim.[3] However, Alford did swear under penalty of perjury to the contents of his Particularized Complaint. *See* Compl. 10, ECF No. 18.

In light of the foregoing principles and submissions, the facts set forth below are established for the purposes of the pending Motion for Summary Judgment. All permissible inferences are drawn in favor of Alford.

---

[3] Alford swore to his Response to Defendants' Motion for Summary Judgment; however, he was specifically warned that "the Court will not consider *as evidence* in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury." Mem. Order ¶ 3, ECF No. 22 (emphasis added). Thus, the Court will not consider the Response as evidence. Alford's Response also fails to comply with Local Rule 56(B) and Federal Rule of Civil Procedure Rule 56(c). Local Rule 56(B) provides:

> **(B) Summary Judgment – Listing Of Undisputed Facts:** Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. *A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute.* In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added). Alford's Response fails to comply with the above Rule. Alford's Response lacks the required section of "all material facts as to which it is contended that there exists a genuine issue necessary to be litigated." E.D. Va. Loc. Civ. R. 56(B). Alford also fails to "cit[e] the parts of the record relied on to support the facts alleged to be in dispute," as required by the Local Rules and the Federal Rules of Civil Procedure. *Id.*; *see also* Fed. R. Civ. P. 56(c)(1) (requiring nonmovant to "cit[e] to particular parts of materials in the record" and to show that "an adverse party cannot produce admissible evidence to support the fact").

### III. PERTINENT FACTS

#### A. Grievance Procedure at the VDOC

Operating Procedure § 866.1 provides that all issues "are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, issues related to disciplinary hearings, State and Federal Court decisions, laws and regulations, and other matters beyond the control of the Virginia Department of Corrections." Mathena Aff. ¶¶ 4–5. Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See* O.P. § 866.1, subsection I.D.1–4. "The first step in in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." *Id.* at subsection I.D.1. If the issue is not resolved verbally, the offender should submit a *Written Complaint*. *Id.* at subsection I.D.2. "The *Written Complaint* must be received by designated staff within 15 days of the original incident or discovery of the incident." *Id.* at subsection I.D.2. Prison staff have fifteen days from receipt of the *Written Complaint* to provide an appropriate written response. *Id.* at subsection II.B.4. "If the issue on the *Written Complaint* is not resolved to the satisfaction of the inmate, or staff fail to provide a written response within 15 days, the inmate may file a *Regular Grievance* . . . . The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." *Id.* at subsection I.D.4. The offender must attach any required documentation demonstrating that he attempted to resolve the issue through the Informal Complaint process, therefore, the offender must submit a copy of his *Written Complaint* or his Emergency Grievance Response with his *Regular Grievance*. *Id.* at subsection III.B.6.

If an inmate received no response to his Written Complaint, he may attach a copy of the Grievance Receipt that he received for the Written Complaint to his Regular Grievance to have it

accepted at intake. A Grievance Receipt is "a VDOC document that an inmate received after filing a . . . Written Complaint or Regular Grievance documenting . . . receipt of the grievance." Mathena Aff. ¶ 10.

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. O.P. § 866.1, subsection III.C.3-4. "If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section on the *Regular Grievance* [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." *Id.* at subsection III.C.5. "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* at subsection III.C.6. "Appealing the intake decision does not satisfy the exhaustion requirement." Mathena Aff. ¶ 11.

### 2. Grievance Review

If the grievance is accepted, within two working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." O.P. § 866.1, subsection III.C.4. Once the grievance is accepted for review, the Institutional Ombudsman determines the proper course of investigation. *Id.* at subsection III.D.1. "Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the inmate unless a continuance is authorized." *Id.* at subsection III.F.2.(b).

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* at subsection IV.A. The appeal must be submitted within five days

of *receipt* of the *Offender Grievance Response*. *Id.* at subsection IV.B.2 (emphasis added). The Level II appeal is generally the final level of review. *See id.* at subsection I.D.9; Mathena Aff. ¶ 12.

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." O.P. § 866.1, subsection V.B.

"An inmate may file an Emergency Grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm;" however, "[t]he filing of an Emergency Grievance does not satisfy the exhaustion requirement." Mathena Aff. ¶ 13.

### B. Alford's Grievance Submissions

S. Mathena, the Regional Ombudsman, reviewed a Grievance Report for Alford for the dates between January 1, 2023, through August 1, 2024. *Id.* ¶ 15. "A Grievance Report . . . logs all Informal/Written Complaints, Regular Grievances that were accepted at intake, and appeals . . . . Therefore, all Informal/Written Complaints, accepted Regular Grievances, and appeals . . . that Alford filed between" these dates "are reflected on Alford's Grievance Report." *Id.* "A Grievance Report, however, does not reflect Regular Grievances that were rejected at intake, or emergency grievances." *Id.* However, if an inmate submits a Regular Grievance that is rejected at intake, "although that Regular Grievance is not shown on his Grievance Report, State Farm is required to date stamp the Regular Grievance and keep a copy of it in the inmate's Grievance File, before returning the rejected Regular Grievance to the inmate." *Id.* ¶ 16.

    1. <u>Emergency Grievances</u>

Alford submitted two Emergency Grievances, Log No. 2107144, dated November 6, 2023, and Log No. 2107137, dated November 7, 2023. *Id.* ¶ 17. Alford complained that the hallway

drain flooded into his cell, there was urine and feces in the water, the area was not properly cleaned, and he was experiencing resulting headaches and stomach pains. *Id.*; *see* Alford Submissions at 35–36. Both Emergency Grievances were responded to within the appropriate eight-hour time frame and were determined to be non-emergencies. Mathena Aff. ¶ 18. Alford was instructed to submit a Written Complaint and a sick call request. Alford Submissions, ECF No. 40-1 at 36.[4] However, Alford's filing of Emergency Grievances did not satisfy the exhaustion requirement. Mathena Aff. ¶ 18.

    2. Written Complaint

On November 5, 2023, Alford submitted a Written Complaint that was received by staff on November 6, 2023, in which he complained that the drain overflowed, he was provided with towels to clean, but that the towels remained in his cell forcing him to inhale bodily fluids all night, giving him headaches. Mathena Aff. ¶ 20. Alford also asked for a transfer. *Id.* Alford was permitted to clean his cell the following day, on November 7, 2023. Compl. ¶ 46. On November 8, 2023, staff responded that the "[i]ssue has been addressed on 11/6/23 with maintenance staff. As advised during MDTS, you are potentially pending institutional infractions that might warrant a transfer." Alford Submissions, ECF No. 40-1 at 37. On November 9, 2023, Alford received the response to his Written Complaint. Compl. ¶ 48.[5]

Alford did not file a Regular Grievance about his underlying complaints. Mathena Aff. ¶ 23. Alford's Grievance File also contains no copies of rejected Regular Grievances related to the

---

[4] On November 7, 2023, the same day as Alford filed his second Emergency Grievance, he was provided with materials to clean his cell. Compl. ¶ 46.

[5] S. Mathena states that the response to the Written Complaint was sent in the institutional mail to Alford on November 13, 2023. Mathena Aff. ¶ 22. However, both Alford and the Grievance Report suggest that the response to Alford's Written Complaint was sent to him and received on November 9, 2023. *See* Grievant Report, ECF No. 40-1 at 33; Compl. ¶ 48.

8

complaints in this action. *Id.* ¶ 24. Because Alford did not file a Regular Grievance that was appealed through all levels of review, he failed to exhaust his administrative remedies. *Id.* ¶ 27.

## IV. EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits," *id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Nevertheless "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a

simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

It is undisputed that Alford failed to file a Regular Grievance and pursue it through all required levels of review. Alford puts forth no evidence that the administrative process was unavailable to him.[6] Thus, the record reflects that Alford failed to exhaust his administrative remedies. Accordingly, Claim One will be DISMISSED WITHOUT PREJUDICE. *See Duncan v. Clarke*, No. 3:12CV482. 2015 WL 75256, at *9 (E.D. Va. Jan. 6, 2015) (explaining that "the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice" (citing *Booth*, 532 U.S. at 735)).

## V. CONCLUSION

.   The Motion for Summary Judgment (ECF No. 39) will be GRANTED. Claim One will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED. The litigation having concluded, the Motion to Withdraw as attorney for Defendants (ECF No. 51) will be GRANTED. The Clerk will be DIRECTED to terminate Ann-Marie White Rene as attorney for Defendants.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: January 27, 2026  
Richmond, Virginia

/s/ RCY  
Roderick C. Young  
United States District Judge

---

[6] In his Response, Alford vaguely suggests that "[i]n order to file an appeal to a written complaint, a regular grievance must be filed, but in cases where individuals are housed in the 'RHU,' inmates are solely dependent on the officers to provide everything for them. Plaintiff asked for proper materials only to be denied until after appeal deadline was exhausted." Resp. Opp'n ¶ 6. However, in a contradictory statement, Alford contends that "we have grievances filed which states that problem was addressed and handled through staff, so there was no need to file a[n] appeal." *Id.* ¶ 7. Thus, from Alford's own statement it appears that he chose not to pursue his grievance any further. And again, Alford was warned that his Response would not be taken as evidence.